**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henry Verne Thompson,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-25-00365-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Extension of Time, (Doc. 16), Plaintiff's Motion to Strike or Amend Opening Brief, (Doc. 18), and Plaintiff's Social Security appeal, (Doc. 1). The Court will address each in turn.

**I.   MOTION FOR EXTENSION OF TIME**

Plaintiff filed a Motion for an Extension of Time wherein he requests a 14-day extension to file his Reply brief. (Doc. 16). Plaintiff correctly notes that the Reply was due on August 14, 2025. (Doc. 16 at 1). Plaintiff submitted his Reply on August 14, 2025. (*See* Doc. 17). The Court will therefore deny Plaintiff's Motion for an Extension of Time as moot.

**II.   MOTION TO STRIKE OR AMEND**

Plaintiff filed a Motion to Strike or Amend wherein he asks the Court to permit him to strike portions of his Opening Brief. (Doc. 18). In part, Plaintiff filed this Motion to address "concerns raised by Defendant regarding certain citations." (Doc. 18 at 1). Those concerns were that Plaintiff (1) included a non-existent quotation from an existing case, (2)

mischaracterized a proposition from an existing case, (3) cited a non-existent case, and (4) miscited a case that did not address the asserted issue. (*See* Doc. 18 at 2). The Court notes that Plaintiff's counsel, Maren Bam, was recently sanctioned for submitting an Opening Brief in a separate Social Security case that "was replete with citation-related deficiencies, including those consistent with artificial intelligence generated hallucinations."[1] (2:25-cv-00689-KML-ASB Doc. 18 at 1). The Court will grant Plaintiff's Motion to Strike; the identified portions are deemed to be stricken.

### III. SOCIAL SECURITY APPEAL

Also pending before the Court is Plaintiff's appeal from the Commission of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 7-3). The Court has reviewed Plaintiff's Opening Brief, (Doc. 11), Defendant's Response, (Doc. 15), and Plaintiff's Reply, (Doc. 17).

#### a. Factual and Procedural Overview

Plaintiff is currently 54 years old[2] with "at least [a] high school education and past work experience as [a] house repairer and [an] automobile mechanic." (Doc. 11 at 3–4). Plaintiff filed his Social Security Disability Insurance ("SSDI") benefits application on March 7, 2022, alleging disabilities beginning on November 3, 2020. (Doc. 10-2 at 22). The application was "denied initially on September 21, 2022, and upon reconsideration on December 12, 2023." (*Id.*). After an administrative hearing, an ALJ denied Plaintiff's claim. (*Id.* at 19). The SSA Appeals Council denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2–4).

#### b. SSA's Five-Step Evaluation Process

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of

---

[1] The Commissioner also flagged this case in its Response, (Doc. 19 at 2).
[2] Plaintiff was 49 on the alleged disability onset date, which matters because he changed age categories once he turned 50. (Doc. 11 at 3–4).

- 2 -

such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," *i.e.*, doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)-(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite his limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)-(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the

physical and mental demands of "his past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### c. ALJ's Five-Step Analysis

Here, at Step One, the ALJ concluded that the record established that although Plaintiff "engaged in substantial gainful activity from [November 3, 2020] through November 2021," there was a continuous 12-month period during which he did not engage in such activity. (Doc. 10-2 at 25). The ALJ's findings address the period during which Plaintiff did not engage in substantial gainful activity. (*Id.*).

At Step Two, the ALJ determined that Plaintiff "has the following severe impairments: degenerative disc disease of the cervical and lumbar spine." (*Id.*).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 27). Subsequently, the ALJ determined that Plaintiff had the RFC to:

> perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) specifically as follows: lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; frequently push and/or pull within the weight limits indicated for lifting and carrying; frequently perform fingering with the bilateral upper extremities; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to hazards, such as heavy moving machinery and unprotected heights.

(*Id.* at 28).

At Step Four, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." (*Id.* at 31).

At Step Five, the ALJ, considering Plaintiff's age, education, work experience, and RFC, found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 32). Examples of such jobs include marker, housekeeper cleaner, and cafeteria attendant. (*Id.* at 33). Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 3, 2020, through [September 13, 2024]." (*Id.*).

### d. Appellate Legal Standard

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial" evidence involves "more than a mere scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational

interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if, despite the legal error, 'the agency's path may reasonably be discerned . . .'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted).

### e. Analysis

Plaintiff appeals the SSA's denial of Social Security benefits, arguing that "the ALJ erred by: (1) improperly dismissing Plaintiff's mental impairments at step two of the sequential evaluation; (2) formulating a [RFC] unsupported by any medical opinion evidence; and (3) conducting a flawed step-five analysis by identifying jobs that conflict with Plaintiff's stooping limitation." (Doc. 11 at 8). The Court now rules.

### i. Mental Impairments

In evaluating the severity of mental impairments, the ALJ must rate the degree of the Plaintiff's limitation in four broad functional areas, sometimes referred to as the "Paragraph B" areas: (1) "[u]nderstand, remember, or apply information;" (2) "interact with others;" (3) "concentrate, persist, or maintain pace;" and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The ALJ completes this rating using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

Here, the ALJ stated the Paragraph B criteria and analyzed each functional area in turn. (Doc. 10-2 at 26). First, the ALJ found Plaintiff had no limitation in understanding, remembering, or applying information. The ALJ reasoned that Plaintiff "did not report or testify to [relevant] limitations" and psychiatric exams consistently showed Plaintiff was alert, oriented, and that he understood his medications. (*Id.*). The ALJ also pointed out that Plaintiff "was noted to understand the risks and be able to make an informed decision regarding leaving the hospital against medical advice." (*Id.*).

Next, the ALJ found Plaintiff had no limitation in interacting with others. The ALJ

explained Plaintiff "reported no issues getting along with others" and "[p]sychiatric exams consistently showed he was alert, oriented, and cooperative." (*Id.*). The ALJ also cited reports that Plaintiff "interact[ed] well with other patients and staff during his inpatient treatment . . . [and] had cooperative and pleasant behavior with appropriate eye contact and good hygiene." (*Id.*).

The ALJ then found Plaintiff had no limitation in concentrating, persisting, or maintaining pace. (*Id.*). The ALJ again noted that Plaintiff "did not report difficulties in this area." (*Id.*). Plaintiff was also "noted to participate in therapy sessions and [he] verbalized [an] understanding of information regarding his medications, their uses, and possible side effects." (*Id.*). Finally, the ALJ found that Plaintiff was mildly limited in adapting or managing himself. The ALJ cited Plaintiff's testimony that he is homeless and "that despite going through inpatient detox treatment, he continues to use illicit substances." (*Id.*).

Plaintiff now argues that "[t]he ALJ's evaluation of the paragraph B criteria is legally insufficient." (Doc. 11 at 10). Specifically, Plaintiff takes issue with the ALJ's citation of evidence from the period during which Plaintiff received inpatient treatment, because "Plaintiff was in a highly structured, monitored treatment environment," which does not reflect "Plaintiff's functioning in the real world or in any competitive work setting." (*Id.*). The Commissioner responds that "Plaintiff does not cite any evidence to show that his mental functioning outside the 'highly structured' environment of substance use treatment indicated mental limitations." (Doc. 15 at 8). Similarly, Plaintiff argues that "[t]he ALJ failed to acknowledge that these 'normal' mental status observations occurred during Plaintiff's brief inpatient treatment stay and may not have been sustained following discharge." (Doc. 11 at 10). The Commissioner responds that Plaintiff again did not provide any evidence "that normal mental status examination findings 'may not have been sustained' following discharge from treatment." (Doc. 15 at 9). The Court agrees with the Commissioner on this point; the ALJ properly analyzed Plaintiff's mental impairments using the evidence available in the record.

1    The Court also finds unpersuasive Plaintiff's evidentiary citations. For example, Plaintiff cites his own testimony that he had "relaps[ed] and was not in a period of sustained abstinence." (Doc. 11 at 10). But this testimony alone does not establish a severe impairment in any of the Paragraph B areas, and Plaintiff did not otherwise testify to specific mental limitations. Similarly, while it is true that some providers indicated that Plaintiff presented as "obviously irritable anxious," this was one step below the most "extreme" option,[3] suggesting that this still would not fit a "severe" rating. (*See, e.g.,* Doc. 10-14 at 81, 113; Doc. 10-15 at 31, 95; Doc. 10-16 at 77; Doc. 10-17 at 139).

   Plaintiff also cites the "broad regimen of psychotropic medications" prescribed "by his treating provider for anxiety and related symptoms." (Doc. 11 at 11). It appears to the Court that many of these medications were prescribed for opioid withdrawal and were only prescribed during Plaintiff's inpatient treatment stay, undermining Plaintiff's claim that the medications "reflect ongoing, clinically significant anxiety that impacts daily life." (Doc. 11 at 11; *see* Doc. 10-14 at 3–33). Thus, the ALJ did not err in not relying on these medications; Plaintiff's attempts on appeal to recast them as something other than what the record supports does not show error by the ALJ.

   In the Reply, Plaintiff states that a "state agency psychological consultant . . . determined Plaintiff's anxiety was severe." (Doc. 17 at 2). It appears to the Court that the state agency psychological consultant did not speak with Plaintiff and specifically stated that there was "insufficient evidence to substantiate the presence of [anxiety or depression]." (AR 89-90). Plaintiff also states that "Dr. Adrianne Galluci Ph.D. determined that Plaintiff's depression was severe." (Doc. 17 at 2). In fact, Dr. Galluci also specifically stated there was "insufficient evidence to substantiate the presence of [anxiety or depression]" and there was "no indication of other [mental health] issues." (AR 109). Thus, the ALJ did not err in finding that the record did not support a finding of a severe mental impairment.

   Plaintiff points to the fact that at least two other providers found that Plaintiff

---

[3] The provider could have selected the following option: "Patient so irritable or anxious that participation in the assessment is difficult." (AR 1472).

presented as irritable, anxious, and/or guarded. (Doc. 10-16 at 16, 111). Additionally, a non-physician conducting a mental health assessment noted that "[s]coring of pre-screening for depression symptoms may be influenced by masking of emotions and/or poor emotional intelligence, as patient reported experiencing thoughts of 'not wanting to live' prior to treatment admission." (Doc. 10-15 at 163). This evidence, without more, does not suggest a "severe" mental impairment, and the ALJ therefore did not err in not interpreting this evidence in the way Plaintiff argues it should be interpreted.

In conclusion, the Court agrees with the Commissioner that "[t]he ALJ relied on the evidence of mental status that was available in the record and reasonably concluded that it did not show that Plaintiff had any mental limitations that warranted inclusion in the RFC." (Doc. 15 at 9).

### ii. Medical Evidence
#### 1. Development of Record

Plaintiff argues that because "agency medical consultants did not offer any opinion," the ALJ "should have recognized the record was inadequate and exercised his duty to further develop the record – for example, by ordering a consultative examination or calling a medical expert to review the imaging." (Doc. 11 at 13–14).

Plaintiff is correct that the ALJ has a duty to develop the record fully and fairly. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). One way that an ALJ may discharge this duty is by "keeping the record open after the hearing to allow supplementation of the record." *Id.* Here, the ALJ did not err because this duty was discharged when the ALJ gave Plaintiff two extra weeks after the hearing to obtain additional medical records. (Doc. 10-2 at 45).

Normally, the inquiry would end here. However, Plaintiff's claim of error on appeal—that the record was inadequately developed due to ALJ error—is refuted by the record itself, which shows that the fault in developing the record lies with Plaintiff himself. On June 6, 2022, the agency attempted to contact Plaintiff's counsel. (Doc. 10-3 at 6). The agency "was on hold for 10 minutes," was "unable to reach [a] live person," and left a

1  voicemail that alerted counsel that if certain materials were not received in 10 days, the
2  agency would "have to make a decision with what [was] in [the] file," which could "result
3  in a determination of not disabled." (*Id.*). On June 15, 2022, the agency again attempted to
4  contact Plaintiff's counsel, was unable to reach anyone, and left another voicemail
5  informing counsel that "failure to respond within 10 days of this notice could result in an
6  unfavorable decision due to not cooperating."[4] (*Id.*). The record also reflects that the agency
7  attempted to contact Plaintiff himself, but that his voicemail inbox was full, and the agency
8  was unable to leave a voicemail message. (*Id.* at 6).

9  Regarding Plaintiff's physical symptoms, Consultative Examiner Dea ultimately
10  concluded that he would not request a consultative exam and recommended insufficient
11  evidence for this claim. (*Id*. at 7 (". . . Very little ME in file to determine severity. . . . I
12  have attempted on numerous occasions to speak to the clmt and AR with no luck. DP is
13  complete and forms have not been returned. Because of noncooperation I will not be
14  requesting a CE. [] [R]ecommending IE for this clm.")). Dea made similar findings
15  regarding Plaintiff's mental impairments. (*Id.* "Clmt is a 51 yo alleging depression and
16  anxiety. There is no ME in file to support these allegations. I have attempted on numerous
17  occasions to speak to the clmt and AR with no luck. DP is complete and forms have not
18  been returned. Because of noncooperation I will not be requesting a CE. []
19  [R]ecommending IE for this clm.")). Consultative Examiners Amon and Abrahimi agreed.
20  (Doc. 10-3 at 8–9). Consequently, the agency concluded that Plaintiff was not disabled.
21  (*Id.* at 10).

22  Plaintiff sought reconsideration of this conclusion. It was again noted that there was
23  limited medical evidence in the file and that Plaintiff had not provided necessary forms.
24  (Doc. 10-3 at 26). Consultative Examiner Mallik concluded that there was insufficient
25  evidence to adjudicate Plaintiff's claim. (*Id.* at 27). Regarding Plaintiff's mental

---

[4] Specifically, A. Brown captured the following notes: "Left vm informing if I have sent forms to complete, however, they have not been submitted. We also need to schedule a consultative examination, however, prior to scheduling the exam, we need to ensure you and/or your client is cooperating. Failure to respond within 10 days of this notice could result in an unfavorable decision due to not cooperating." (Doc. 10-3 at 6).

- 10 -

impairments, Consultative Examiner Gallucci agreed. (*Id.* at 28).

An ALJ does not err if the ALJ tries to procure a consultative medical opinion but cannot do so because "the consultative examiners lacked sufficient information due to Plaintiff's own failure to provide necessary information." *Diaz v. Comm'r of Soc. Sec.*, 1:24-CV-00704-EPG, 2025 WL 2299515, at *5 (E.D. Cal. Aug. 8, 2025). Put differently, a Plaintiff may not appeal on the basis "that the ALJ erred by failing to obtain a consultative medical opinion where the ALJ attempted to obtain that opinion, but the consultative examiner concluded that it had insufficient information because Plaintiff did not provide requested information." *Id.* at *3. This is, in part, based on the duty Plaintiff has to provide information to the agency. *See* Social Security Ruling (SSR) 17-4p (claimants and their representatives have affirmative duty "to act with reasonable promptness to help obtain the information or evidence that the claimant must submit and forward the information or evidence to us as soon as practicable").

Here, neither Plaintiff nor Plaintiff's counsel provided requisite information to the agency. The consultative examiners, initially and upon reconsideration, reviewed the evidence in the record and found it insufficient to establish a disability. When the case came before the ALJ, the ALJ correctly "did not rely on Plaintiff's failure to [cooperate] . . . as a basis for finding Plaintiff not disabled," but rather "evaluated Plaintiff's claim on the evidence presented, including the medical evidence of record and Plaintiff's testimony, and rendered an RFC and determination based on that evidence." *Diaz*, 2025 WL 2299515, at *6. Accordingly, the Court finds that the ALJ did not err in this regard.

### 2.  "Playing Doctor"

Plaintiff generally objects to the ALJ's RFC findings because, Plaintiff argues, the ALJ "derived" them "from his own reading of the raw medical data." (Doc. 11 at 12). Plaintiff specifically takes issue with the ALJ "independently translating MRI and CT scan results – which showed severe spinal pathology – into specific work limitations." (Doc. 11 at 12). The Commissioner responds that the scan results cited by the ALJ "were not raw images that the ALJ interpreted with no medical guidance, but rather summaries of

1  'impression[s]' or 'findings' from a medical professional." (Doc. 15 at 10). The Court
2  agrees with the Commissioner. The ALJ uses the language of, and cites to, the impressions
3  and findings from medical providers, but does not rely on its own interpretation of any
4  "raw medical data." (AR 28 (citing Exhibit 9F)). To the extent that Plaintiff argues that the
5  ALJ could not make an RFC determination because "no doctor . . . opined at all on
6  Plaintiff's functional capacities," the Court addressed that argument above and will not
7  repeat its reasoning.[5] (Doc. 11 at 12; *see also* Doc. 11 at 14).

### iii. Stooping Limitation

Finally, Plaintiff argues the ALJ's RFC finding is not supported by substantial evidence because there is a conflict between the jobs that ALJ found Plaintiff could perform and the ALJ's finding that Plaintiff could "occasionally . . . stoop." (Doc. 11 at 15–16; Doc. 10-2 at 28). A person that can stoop "occasionally" can stoop "up to one-third of the time." *Titles II & Xvi: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15, at *7 (1985).

Based on the RFC, the ALJ adopted the vocational expert's testimony that Plaintiff could perform the requirements of a marker, housekeeper cleaner, or cafeteria attendant. (Doc. 10-2 at 33). Plaintiff states that the Dictionary of Occupational Titles ("DOT") states that stooping is "frequent" for both the marker and housekeeper cleaner positions. (Doc. 11 at 16).

Upon review, the Court finds this to be incorrect and is unclear where Plaintiff is

---

[5] Plaintiff relies on *Day v. Weinberger*, 522 F.2d 1154 (9th Cir. 1975) to support his argument. (Doc. 11 at 12, 14–15). However, the Court agrees with the Commissioner that Plaintiff's reliance on *Day* is misplaced. (*See* Doc. 15 at 11). In *Day*, the ALJ went outside the record and consulted "medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition." 522 F.2d at 1156. Here, Plaintiff does not allege that the ALJ consulted any outside sources.
  Furthermore, in *Day*, the ALJ rejected two, uncontradicted medical opinions and instead relied on the ALJ's own observations of the claimant and the claimant's answer to a question. 522 F.2d at 1157. Here, Plaintiff does not argue that the ALJ *rejected* medical opinions, but rather argues that the ALJ "played doctor" when the ALJ "derive[d] ultimate functional conclusions from raw data that has not been translated by a doctor." (Doc. 11 at 14). As the Commissioner explains, *Day* "did not . . . find that remand was warranted based on the discounting of a medical source statement and an ALJ substituting his own judgment for that of a medical source." (Doc. 15 at 11–12).

receiving its information from. For the marker position, the DOT states that stooping is "not present." 209.587-034 Marker, DICOT 209.587-034, 1991 WL 671802. For the housekeeper cleaner and cafeteria attendant positions, the DOT states that stooping "[e]xists up to 1/3 of the time." 323.687-014 Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783; 311.677-010 Cafeteria Attendant, DICOT 311.677-010, 1991 WL 672694. Because these limitations are consistent with the RFC, there is no conflict, and the ALJ did not err.[6]

### iv. Conclusion

In making its RFC determination, the ALJ started with an in-depth review of the medical record. (Doc. 10-2 at 28–29). The ALJ listed specific examples of medical evidence that "fail[ed] to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations." (*Id.* at 29). The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 30). The ALJ gave specific examples of some of Plaintiff's statements the ALJ found inconsistent. (*Id.*). Finally, the ALJ found that while the record supported the finding of severe impairments, additional evidence supported the ALJ's RFC findings. (*Id.* at 31). The ALJ listed examples of such supporting evidence, with citations to the record. (*Id.*). All cited records support the ALJ's conclusions, and the Court therefore finds that the ALJ's opinion was supported by substantial evidence.

### IV. CONCLUSION

Based on the foregoing,

---

[6] Because there is simply no conflict between the ALJ's RFC and the positions that the vocational expert testified Plaintiff could perform, the Court finds wholly unpersuasive the remainder of Plaintiff's arguments. For example, Plaintiff cites *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001), which holds that an ALJ need only "explain [the] deviation" when the ALJ relies on a job description "that fails to comport with a claimant's noted limitations," which is not the case here. (*See* Doc. 15 at 14 ("There is no deviation here between Plaintiff's noted limitations in the RFC and the requirements of the jobs the vocational expert testified to, and thus no further explanation was required.")).

- 13 -

1    **IT IS ORDERED** that Plaintiff's Motion for an Extension of Time, (Doc. 16), is
2    **DENIED** as moot.
3    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike or Amend Opening
4    Brief, (Doc. 18), is **GRANTED**. The identified portions are deemed to be stricken.
5    **IT IS FURTHER ORDERED** that the ALJ's decision is **AFFIRMED** and the
6    Clerk of the Court shall enter judgment accordingly.
7    Dated this 5th day of September, 2025.

James A. Teilborg
Senior United States District Judge